**JUDGE SAND**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**10 CIV 6277**

------------------------------------------------------------ X

ISRAEL VASQUEZ,

                      Plaintiff,

    -against-

CITY OF NEW YORK; MICHAEL DONNELLY
(Tax ID # 883801), THOMAS AIELLO
(Tax ID # 868427), ANNABELLA NIEVES
(Tax ID # 876782), Individually and as Members
of the New York City Police Department (NYPD),

                      Defendants.

------------------------------------------------------------ X

**COMPLAINT**

Index No.

**JURY TRIAL DEMANDED**



        Plaintiff ISRAEL VASQUEZ ("Plaintiff"), by his attorneys ROMANO & KUAN, PLLC complaining of the Defendants, respectfully alleges, upon information and belief as follows:

### NATURE OF ACTION

        1.    This is a civil action, pursuant to 42 U.S.C. §1983, 1985 and 1988, seeking monetary damages for Plaintiff's malicious criminal prosecution, wrongful conviction, and imprisonment due to the violation of his fundamental federal constitutional rights to due process and to be free of unreasonable search and seizure pursuant to the Fourteenth and Fourth Amendments to the United States Constitution.

        2.    Detectives and police officers of the New York City Police Department (hereinafter "NYPD"), instigated and continued the prosecution of Plaintiff without probable cause to believe Plaintiff to be guilty of the crimes charged, manufactured evidence through highly-suggestive, unfair, and unreliable investigative procedures which tainted the witnesses recollection and encouraged perjured testimony, which led to the wrongful and unjust prosecution and conviction of Plaintiff.

3. Defendant City is liable pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978) *("Monell")*. Such unconstitutional conduct by the NYPD was tolerated or encouraged by the deliberate or de facto policies, practices or customs of this City agency. The policies, practices and/or customs of the NYPD included a deliberate indifference to properly train, supervise, or discipline their employees who engaged in the above constitutional violations.

4. As a result of the aforementioned police misconduct, Plaintiff served more than twelve (12) years in prison for crimes he did not commit.

## STATEMENT OF JURISDICTION

5. At all times herein mentioned, Plaintiff was a resident of the County of the Bronx, City and State of New York.

6. Defendant CITY OF NEW YORK ("Defendant CITY") is a municipal corporation existing by virtue of the laws of the State of New York.

7. The NYPD is an agency of the Defendant CITY, and all police officers and detectives referred herein were, at all times relevant to this complaint, its employees and agents.

8. Defendant MICHAEL DONNELLY ("Defendant DONNELLY "), Tax I.D. No. 883801, was at all relevant times a detective employed by the New York City Police Department. He is named here in his official and individual capacities.

9. Defendant THOMAS AIELLO ("Defendant AIELLO"), Tax I.D. No. 868427, was at all relevant times a detective employed by the New York City Police Department. He is named here in his official and individual capacities.

10. Defendant ANNABELLA NIEVES ("Defendant NIEVES"), Tax I.D. No. 876782, was at all relevant times a detective employed by the New York City Police

Department. She is named here in her official and individual capacities.

11. At all times relevant to this Complaint, the aforementioned Defendants acted toward Plaintiff under color of the statutes, ordinances, customs, and usage of the State and City of New York, and within the scope of their employment.

12. Defendants DONNELLY, AIELLO, AND NIEVES are collectively referred to as the "Individual Police Officer Defendants."

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### Procedural History of Underlying Criminal Case

13. The underlying criminal case involved an execution-style murder of a Bronx woman, Denise Raymond, that occurred on the evening of January 17, 1995. According to the prosecution, Ms. Raymond's murder was orchestrated by Charles McKinnon, a former boyfriend of the victim, who was charged with her murder and, after a separate trial, was acquitted. Plaintiff and his co-defendants -- Michael Cosme, Devon Ayers and Carlos Perez -- were charged with having carried out Ms. Raymond's murder.

14. Plaintiff was arrested on February 10, 1995 and indicted on March 14, 1995 (Bronx Indictment No. 1086/95).

15. Following a jury trial conducted by Assistant District Attorney Daniel McCarthy, a verdict was entered on February 26, 1996 by the Supreme Court, Bronx County, convicting Plaintiff of two counts of murder in the second degree.

16. On May 8, 1997, Plaintiff was sentenced to two concurrent prison terms of twenty-five years to life.

17. Plaintiff appealed his conviction. By order dated, August 23, 2007, the Appellate Division, First Department, unanimously reversed, vacated the conviction, and dismissed the

indictment in its entirety. In its decision, the Appellate Division held that the evidence against Plaintiff was legally insufficient and criticized the prosecution's case as one "based on speculation unsupported by any credible evidence." *See People v. Vasquez*, 43 A.D.3d 348 (1st Dep't 2007).

18. Plaintiff was released from prison on August 27, 2007.

19. Plaintiff spent more than twelve and a half years in prison.

### The Police Investigation

20. Denise Raymond came home to her apartment, in the Soundview area of the Bronx, after work on the evening of January 17, 1997. Based on the crime scene investigation, it appeared that Ms. Raymond was accosted as she entered her apartment, after which she was dragged to her bedroom, handcuffed, blindfolded, and gagged, and then shot twice in the head, through two pillows that were placed over her.

21. Following the shooting, Defendants DONNELLY, AIELLO, and NIEVES, detectives employed by the NYPD, investigated Ms. Raymond's homicide.

22. Ms. Raymond's murder received considerable media attention and was widely reported in the local newspapers, radio, and television news.

23. During the investigation, the Defendants repeatedly questioned a teenager named Cathy Gomez and a neighborhood drug addict, Miriam Tavares, who spoke only Spanish, about their knowledge of the Raymond murder.

24. On February 3, 1996, the police arrested Michael Cosme based on information provided by Ms. Gomez and Ms. Tavares.

25. That same day, Plaintiff, who grew up with Mr. Cosme and considered him family, arrived at the police precinct to inquire why Mr. Cosme had been arrested and to deliver

cookies, cigarettes, and soda to him.

26. The police interrogated Plaintiff at the precinct and released him.

27. Despite knowing that Cathy Gomez and Miriam Tavares had unreliable information and provided inconsistent accounts, the Defendants relied on the information provided by these two witnesses to pursue Plaintiff as a suspect.

28. By using a variety of unconstitutional practices, including but not limited to questioning the witnesses together, using Cathy Gomez as a translator for Miriam Tavares, feeding details about the crime scene and police investigation that were unknown to the witnesses, threatening to unjustifiably jail Ms. Gomez's parents who were on probation and parole, and giving both witnesses, who were indigent, financial incentives to provide false incriminating evidence, the Defendants manufactured testimony against Plaintiff that they knew or should have known was false.

29. After the Defendants used these highly suggestive, coercive, and unconstitutional tactics while questioning the witnesses, Cathy Gomez falsely claimed that, the day after Ms. Raymond's death, she was in a park with a lot of people and allegedly overheard several individuals make statements about the homicide.

30. After Defendants told her that a juice container and mustard jar was found in Ms. Raymond's sink and an empty deli wrapper in her refrigerator at the crime scene, which the police theorized the murderers had left, Ms. Gomez claimed that Plaintiff made a statement in the park about drinking juice and having a sandwich.

31. On the basis of this narrow shred of evidence, the police concluded that Plaintiff was present in Ms. Raymond's apartment at the time of her murder and that Plaintiff was an accomplice.

32. The police did not have probable cause to arrest and prosecute Plaintiff on the paucity of this evidence. Nevertheless, on February 10, 1995, Defendants arrested and charged Plaintiff with Denise Raymond's murder.

33. The Defendants knew or should have known that they did not have probable cause to arrest and prosecute Plaintiff because they deliberately used constitutionally impermissible practices to manufacture false evidence against him.

34. The Defendants knowingly coached Ms. Gomez, the only witness against Plaintiff, to give such false testimony against Plaintiff which led to his wrongful and unjust prosecution and conviction.

35. Additionally, the Defendants knew they did not have probable cause to arrest and prosecute Plaintiff, since a mere two weeks after the murder, before Plaintiff was even arrested, Ms. Gomez told Defendant DONNELLY that she did not know anything about this murder.

36. As further proof that the evidence against Plaintiff was manufactured by the Defendants, Ms. Gomez could not provide a consistent account of the alleged events in the park. During the Grand Jury proceeding, Ms. Gomez testified that Devon Ayers, not Plaintiff, made the statement about the juice and sandwich. At trial, Ms. Gomez testified that she did not recall who was in the park that day, if Plaintiff made the statement about the juice and sandwich, or if such a statement was ever even made.

37. There was no other physical, circumstantial or testimonial evidence linking Plaintiff to Ms. Raymond or the scene of the crime.

38. The Defendants procured an indictment against Plaintiff in bad faith.

39. Plaintiff is innocent and has maintained his innocence from the inception of the criminal prosecution against him.

## Plaintiff's Injuries and Damages

40. As a direct and proximate consequence of the aforementioned actions by the Defendants, Plaintiff:

 (1) Suffered more than twelve and a half years of imprisonment;

 (2) Suffered severe emotional and mental anguish and pain;

 (3) Was denied his federal constitutional rights and liberties;

 (4) Was denied the opportunity to pursue normal relationships with and to enjoy the companionship of family members and friends;

 (5) Was publicly shamed, disgraced, ridiculed and humiliated and suffered damage to reputation;

 (6) Incurred substantial legal fees:

 (7) Was denied years of gainful employment and income;

 (8) Suffered permanent impairment of earning power;

 (9) Continues to suffer emotional and mental anguish and pain; and

 (10) Incurred other items of attendant damages.

## FIRST CAUSE OF ACTION

**(42 U.S.C. §1983; Malicious Prosecution; Individual Police Officer Defendants)**

41. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth herein.

42. By virtue of the foregoing, the aforementioned police officers and detectives initiated, or caused the initiation, of criminal proceedings against Plaintiff.

43. Defendants, individually and collectively, manufactured, acted in concert to manufacture, aided and abetted each other to manufacture, and/or conspire to manufacture,

testimony which they intended to use against Plaintiff in criminal proceedings, and/or which they caused to be used as a basis for Plaintiff's prosecution and conviction.

44. The aforementioned Defendants did so knowing that the testimony was false or were highly likely to be false, and/or with deliberate indifference to whether they were true or false, through the use of constitutionally impermissible, coercive, highly-suggestive and unreliable interrogation procedures.

45. Without the false or utterly unreliable testimony which Defendants wrongfully manufactured or knew had been wrongfully manufactured, there would have been no basis to prosecute and convict Plaintiff for the murder of Denise Raymond.

46. The police officers and detectives acted with actual malice.

47. There was no probable cause for the commencement or the continuation of the criminal proceeding.

48. The prosecution terminated in Plaintiff's favor.

49. The acts and conduct of the defendants constitute malicious prosecution in violation of the Fourth Amendment to the United States Constitution.

50. Defendant City of New York is liable under the principle of *respondeat superior*.

## SECOND CAUSE OF ACTION

**(42 U.S.C. §1983; Due Process; Individual Police Officer Defendants)**

51. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth herein.

52. Defendants, individually and collectively, manufactured, acted in concert to manufacture, aided and abetted each other to manufacture, and/or conspire to manufacture, testimony which they intended to use against Plaintiff in criminal proceedings, and/or which they

caused to be used as a basis for Plaintiff's prosecution and conviction.

53. The aforementioned Defendants did so knowing that the testimony was false or were highly likely to be false, and/or with deliberate indifference to whether they were true or false, through the use of constitutionally impermissible, highly-suggestive and unreliable interrogation procedures.

54. Without the false or utterly unreliable testimony which Defendants wrongfully manufactured or knew had been wrongfully manufactured, there would have been no basis to convict Plaintiff for the murder of Denise Raymond.

55. The aforesaid conduct of Defendants operated to deprive Plaintiff of his right to due process and a fair trial under the Fourteenth Amendment of the United States Constitution.

## THIRD CAUSE OF ACTION

### (Monell/ 42 U.S.C. § 1983 Claim Against Defendant City of New York)

56. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth herein.

57. The foregoing violations of Plaintiff's federal constitutional rights and resultant injuries were further directly, proximately, and substantially caused by conduct, chargeable to Defendant City of New York, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are arrested or prosecuted based upon investigations conducted by members of the NYPD, namely

   a) the institution and implementation of grossly negligent, reckless and/or deliberately inadequate or unlawful policies, procedures, regulations, practices, and/or customs concerning tactics used in interrogating and questioning witnesses resulting in false, unreliable, and manufactured evidence; and

   b) deliberate indifference by policymaking officials at the NYPD with respect to their obligation to properly instruct, train, supervise and discipline their employees, including the individual defendants in this case, with respect to such

matters, in order to deter and to prevent such constitutional violations from occurring.

58. The aforesaid deliberate or *de facto* policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for the Defendant City of New York and the NYPD, who knew (or should have known)

   (a) to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

   (b) that such issues either present employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of employees mishandling such situations; and

   (c) that the wrong choice by municipal employees concerning such issues will frequently cause the deprivation of the constitutional rights of a criminal suspect or accused and cause him constitutional injury.

59. The aforementioned policymaking officials had the knowledge alleged in the preceding paragraph based upon, among other reasons, (A) numerous judicial decisions, (B) numerous civil lawsuits, alleging that police have manufactured, falsified, exaggerated or withheld evidence, thereby causing unlawful injuries to individuals suspected of crime, and (C) reports by, among others, New York City Comptrollers Elizabeth Holtzman and Alan Hevesi, finding that the NYPD did little or nothing to investigate, discipline or retrain officers alleged in civil lawsuits to have engaged in such wrongful behavior.

60. Despite being put on notice by the foregoing that significant numbers of police officers and detectives do not understand or comply with the aforementioned constitutional requirements, policymaking officials for the City of New York have inexcusably failed to discipline and/or re-train such officers, thereby demonstrating deliberate indifference to the

constitutional requirements being infringed.

61. Under the principles of municipal liability for federal civil rights violations, policymaking officials for the Defendant City of New York and the NYPD, have final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters, including proper practices to be used in interrogating and questioning witnesses to avoid false, unreliable, tainted, and manufactured evidence against criminal defendants.

62. The policymaking officials for the Defendant City of New York and the NYPD, at all relevant times, had final authority, and constitute City policymakers for whom the City is liable, with respect to compliance by employees of the NYPD with the above-mentioned constitutional requirements.

63. During all times relevant to this Complaint, the policymaking officials for the Defendant City of New York and the NYPD owed a duty to the public at large and to Plaintiff, which he knowingly and intentionally breached, or to which he was deliberately indifferent, to implement policies, procedures, customs and practices sufficient to deter and to avoid conduct by his subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

64. The aforesaid policies, procedures, regulations, practices and/or customs of Defendant City and the NYPD were collectively and individually a substantial factor in bringing about the aforesaid violations of Plaintiff's rights under the Constitution of the United States.

65. By virtue of the foregoing, Defendant City of New York is liable for having substantially caused the foregoing violations of Plaintiff's constitutional rights and his constitutional injuries.

## JURY DEMAND

66. Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief jointly and severally against Defendants:

1. Compensatory damages in an amount to be determined;

2. Punitive damages against the Individual Police Officer Defendants in an amount to be determined;

3. For pre-judgment interest as allowed by law;

4. An order awarding Plaintiff reasonable attorneys' fees, together with the costs and disbursements, pursuant to 42 U.S.C. §1988 and to the inherent powers of this Court; and

5. Such other further relief as the Court may deem just and proper.


Dated: August 20, 2010
       New York, New York


                                        ROMANO & KUAN, PLLC

                                        Julia P. Kuan (JK 3822)
                                        100 Lafayette Street, Suite 401
                                        New York, New York 10013
                                        (212) 274-0777

                                        *Attorneys for Plaintiff*