UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

ISRAEL VASQUEZ,

                                        Plaintiff,                    Index No. 10-cv-6277 (LDS)

            -against-

CITY OF NEW YORK; MICHAEL DONNELLY
(Tax ID # 883801), THOMAS AIELLO
(Tax ID # 868427), ANNABELLE NIEVES,
(Tax ID # 876782), Individually and as Members
of the New York City Police Department (NYPD),

                                        Defendants.
------------------------------------------------------------ X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**



Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
(212) 763-5000

Romano & Kuan, PLLC
100 Lafayette Street, Suite 401
New York, New York 10013
(212) 274-0777

## TABLE OF CONTENTS

PAGE NO(s):

TABLE OF AUTHORITIES ................................................................................. ii-iv

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF THE FACTS ............................................................................ 2

    Mr. Vasquez is arrested despite an absence of credible evidence against him ............ 3

    Defendants manufacture evidence against Mr. Vasquez ............................................ 3

    Mr. Vasquez's conviction is vacated after nearly thirteen years of wrongful
    Imprisonment ............................................................................................................ 4

ARGUMENT ........................................................................................................ 6

    I.    Standard ................................................................................................ 6

    II.    This Court's prior holding that the Amended Complaint is not futile
        is the law of the case ............................................................................ 6

    III.    The Amended Complaint sets forth specific facts in support of each
        of Plaintiff's claims ............................................................................ 7

        A.    Plaintiff's malicious prosecution claim is strong ................................ 9

        B.    Plaintiff's due process claim is unassailable ....................................... 14

        C.    Plaintiff has sufficiently alleged a *Monell* claim ................................ 17

    IV.    Defendants' factual arguments regarding the weight of the evidence
        are improper on a motion to dismiss, and are without merit ........................ 19

        A.    Judicial Notice may not be taken of court documents for the truth
            of the matter asserted ...................................................................... 20

        B.    Plaintiff has sufficiently alleged claims against each Defendant ........ 22

        C.    Defendants are not entitled to qualified immunity. ........................... 23

CONCLUSION ..................................................................................................... 23

# TABLE OF AUTHORITIES

**PAGE NO(s):**

**Federal Cases:**

*Amaker v. Weiner,*
  179 F.3d 48 (2d Cir. 1999) .................................................................................16

*Bertuglia v City of New York,*
  839 F. Supp. 2d 703 (S.D.N.Y. 2012) ..............................................17, 18, 19

*Brandon v. City of New York,*
  705 F. Supp. 2d 261 (S.D.N.Y.2010) ...........................................................15

*Carter v. Port Auth. of New York & New Jersey,*
  2004 WL 2978282 (S.D.N.Y. Dec. 20, 2004) ..............................................11

*Cash v. County of Erie,*
  654 F.3d 324 (2d Cir. 2011), *cert denied,*
  132 S. Ct. 1741, (2012) .................................................................................19

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002) ..........................................................................20

*Chimurenga v. City of New York,*
  45 F. Supp. 2d 337 (S.D.N.Y. 1999) ..................................................10, 11, 12

*Connick v. Thompson,*
  131 S.Ct. 1350 (2011) ....................................................................................19

*Cook v. Sheldon,*
  41 F.3d 73 (2d Cir.1994) ...............................................................................11

*Cox v. County of Suffolk,*
  827 F. Supp. 935 (E.D.N.Y. 1993) ................................................................11

*Cunninham v. New York City,*
  04 CIV. 10232 (LBS), 2007 WL 2743580 (S.D.N.Y. Sept. 18, 2007) .........11

*DiFolco v. MSNBC Cable L.L.C.,*
  622 F.3d 104 (2d Cir. 2010) .......................................................................6, 20

*Gallegos v. Brandeis Sch.,*
  189 F.R.D. 256 (E.D.N.Y. 1999) .....................................................................7

*Green v. Montgomery,*
   219 F.3d 52 (2d Cir. 2000) ................................................................13

*Heck v. Humphrey,*
   512 U.S. 477 (1994) .........................................................................16

*Iqbal v. Ashcroft,*
   556 U.S. 662 (2009) .....................................................................6, 22

*Johnson v. Holder,*
   564 F.3d 95 (2d Cir. 2009) ................................................................7

*Jovanovic v. City of New York,*
   No. 04 Civ. 8437, 2006 WL 2411541 (S.D.N.Y. Aug. 17, 2006)...................15

*Kramer v. Time Warner Inc.,*
   937 F.2d 767 (2d Cir. 1991) ..............................................................20

*Marshall v. Sullivan,*
   105 F.3d 47 (2d Cir. 1996) ................................................................23

*Matrixx Initiatives, Inc. v. Siracusano,*
   131 S. Ct. 1309 (2011) .....................................................................22

*Mitchell v. Victoria Home,*
   377 F. Supp. 2d 361 (S.D.N.Y. 2003) ..................................................16

*Monell v. Dep't of Soc. Servs.,*
   436 U.S. 658 (1978) .....................................................................18, 19

*N.H. Ins. Co. v. Total Tool Supply, Inc.,*
   621 F. Supp. 2d 121 (S.D.N.Y. 2009) ...................................................7

*Nibbs v. City of New York,*
   800 F. Supp. 2d 574 (S.D.N.Y. 2011) .................................................15

*Nowosad v. English,*
   903 F. Supp. 377 (E.D.N.Y. 1995) ......................................................6

*Rehberg v. Paulk,*
   132 S. Ct. 1497 (2012) .....................................................................10

*Ricciuti v. N.Y.C. Transit Authority,*
   124 F.3d 123 (2d Cir. 1997) ...............................................9, 10, 11, 15

*Schiller v. City of New York,*
   04 CIV. 7922 RJS JCF, 2008 WL 20002 (S.D.N.Y. Jan. 23, 2008) ............15

*United States v. Walters,*
  510 F.2d 887 (3d Cir. 1975) .................................................................................20

*Walker v. City of New York,*
  974 F.2d 293 (2d Cir. 1992) .................................................................................18

*Zahrey v. Coffey,*
  221 F.3d 342 (2d Cir. 2000) ............................................................................15, 23

**Federal Statutes**:

42 U.S.C. § 1983 ...........................................................................................15, 16

Plaintiff, by his attorneys Romano & Kuan, PLLC and Emery Celli Brinckerhoff & Abady LLP, submits this memorandum of law in opposition to Defendants' motion to dismiss his Amended Complaint.

## PRELIMINARY STATEMENT

This action involves serious and knowing misconduct on the part of three individual Defendants – Detectives Aiello, Donnelly, and Nieves – that caused Israel Vasquez to spend nearly thirteen years in prison for a crime he did not commit. His Complaint challenges the widespread police misconduct – manufacturing evidence, knowingly coercing witnesses into giving false testimony, completing false police reports, and deliberately concealing *Brady* material from the prosecutor – that resulted in his being maliciously prosecuted and denied a fair trial. Mr. Vasquez's initial complaint, and the operative Amended Complaint ("Complaint" or "Amended Complaint"), alleges that his wrongful conviction was the direct result of Defendants' decision to lie to prosecutors and his trial jury.

Defendants answered all claims in the original complaint nearly two years ago. Plaintiff recently amended his complaint to add facts relating to a newly-discovered *Brady* violation that occurred at his trial. The Amended Complaint did *not* add any new claims or Defendants. Now, two years after they answered the complaint, and after discovery has provided powerful proof of Plaintiff's claims, Defendants have submitted a patently improper motion to dismiss. Apparently recognizing that Plaintiff's Complaint adequately states a claim upon which relief can be granted, Defendants ignore Fed. R. Civ. P. 12(b)(6) standard, and instead cherry-pick evidence produced in discovery to

create the false appearance that Plaintiff's claims are without support. Defendants'

motion should be denied in its entirety.

## STATEMENT OF THE FACTS

At the age of seventeen, Mr. Vasquez was tried for two murders he did not

commit – that of Denise Raymond, a Federal Express worker, and Baithe Diop, a livery

cab driver. Amended Complaint ("AC") AC ¶¶ 14-15, 17. He was tried after Defendants

Aiello, Donnelly, and Nieves – detectives employed by the NYPD who investigated the

homicides – manufactured evidence against him and presented the false theory that the

two homicides were linked, and that Mr. Vasquez and his co-defendants committed both

murders. AC ¶¶ 15, 23, 45-47. Defendants engaged in blatant misconduct throughout

the course of the investigation, including by using one unreliable witness as the

"translator" for the only other equally unreliable witness, fabricating evidence, providing

details of the crimes to the only two purported witnesses, knowingly coercing these

witnesses into giving false testimony, and committing *Brady* violations during Mr.

Vasquez's prosecution and trial. AC ¶ 31. As a result of these unconstitutional tactics,

Mr. Vasquez was convicted of the Raymond murder and sentenced to two concurrent

terms of twenty-five years to life. AC ¶ 18. He spent the majority of his adult life – from

the age of seventeen until he was nearly thirty – in prison, until an appellate panel of the

First Department unanimously overturned his conviction and dismissed the indictment in

2007. AC ¶ 19. Mr. Vasquez's conviction was plainly wrong, obtained through

improper means, and the serious loss of liberty he suffered was clearly preventable.

**Mr. Vasquez is arrested despite an absence of credible evidence against him**

On February 10, 1995, Defendants arrested Mr. Vasquez for murder, despite the complete absence of evidence against him. AC ¶ 16. There was no evidence Mr. Vasquez knew either victim, or had any motive to harm them. There was no physical evidence connecting him to either crime. His fingerprints matched none of the prints recovered from either crime scene. Not one piece of objective evidence – guns, bullets, DNA, blood-stains, or otherwise – was ever found to link him to either crime. There was not a single objective witness who came forward to tie Mr. Vasquez to either crime. There was not a single shred of physical, circumstantial, or testimonial piece of evidence against Mr. Vasquez, other than the evidence Defendants Donnelly, Nieves, and Aiello ("Defendants") falsely manufactured. AC ¶ 45-46.

**Defendants manufacture evidence against Mr. Vasquez**

Under pressure to solve a high-profile murder, Defendants created false evidence against Mr. Vasquez. They repeatedly and improperly questioned a troubled sixteen year old, Cathy Gomez, who lived in Mr. Vasquez's neighborhood, and used a variety of unconstitutional practices to interrogate Ms. Gomez and to force her to give testimony they knew to be false. AC ¶¶ 25, 31. Even though Ms. Gomez told Defendant Donnelly that she knew nothing about the Raymond murder, Defendants Aiello, Donnelly, and Nieves continued to interrogate Ms. Gomez. AC ¶ 43. They provided her with details about each of the crimes, and then forced her to testify against Mr. Vasquez by using a variety of unconstitutional methods, such as threatening to unjustifiably jail Ms. Gomez's parents who were on probation, and threatening to arrest and prosecute Ms. Gomez's younger brother if she did not cooperate. AC ¶ 31. Defendants' tactics

included repeatedly interrogating Ms. Gomez together with a neighborhood drug addict, Miriam Tavares, who spoke only Spanish, and using Ms. Gomez as a "translator" for Ms. Tavares. AC ¶ 31. They also secretly offered both Ms. Gomez and Ms. Tavares, who were indigent, financial incentives for giving false testimony. AC ¶ 31.

After Defendants interviewed her repeatedly, threatened her family, and provided her with details of the crime, Cathy Gomez eventually claimed and ultimately testified that she overheard Mr. Vasquez and several other individuals make statements in the park about Ms. Raymond's homicide – information that was used to arrest Mr. Vasquez, to secure an indictment against him for both murders, and to eventually convict him of the Raymond murder. AC ¶¶ 31-34.

Plaintiff's claims in his Amended Complaint (which are identical to his claims in his original Complaint, which the Defendants answered over two years ago) more than adequately allege causes of action for denial of due process, malicious prosecution, and *Monell* liability.

The Complaint alleges that each individual Defendant – Donnelly, Aiello, and Nieves -- acted in concert with the others when manufacturing evidence against Mr. Vasquez to secure his wrongful conviction. *See, e.g.*, AC ¶¶ 16, 31-34, 85, 88, 96, 99. Each Defendant personally met with the witnesses multiple times. Each Defendant was personally involved in manufacturing evidence.

**Mr. Vasquez's conviction is vacated after nearly thirteen years of wrongful imprisonment**

On August 23, 2007, Mr. Vasquez's conviction was unanimously reversed, the indictment dismissed, and he was released on August 27, 2007. AC ¶ 19. He commenced this action by filing a Complaint on August 20, 2010. Dkt. 1. Plaintiff

subsequently filed a supplemental complaint that included allegations relating to a newly-discovered *Brady* violation, but that did not add any new defendants or any new claims. Dkt. 37.

On July 31, 2012, Defendants opposed the filing of Plaintiff's Amended Complaint, and argued in detail that the Amended Complaint was futile because it failed to state a claim upon which relief could be granted. Dkt. 30. In an opinion dated August 14, 2012, this Court granted Plaintiff leave to file the Amended Complaint, and rejected Defendants' argument that the Amended Complaint was futile. Dkt. 36.

Since Mr. Vasquez's original complaint was filed, Ms. Gomez completely recanted the testimony she provided against Mr. Vasquez and his criminal codefendants. In a videotaped interview conducted by Peter Cross, the attorney of one of Mr. Vasquez's former codefendants, Ms. Gomez professed that everyone charged with and convicted of the murders is innocent. She and her brother (whom Defendants threatened to arrest) explained, during their videotaped interviews, how Defendants told them information about the crimes, and showed them pictures of the crime scene to influence their testimony. Ms. Gomez is now cooperating with efforts to vacate the convictions of those tried with Mr. Vasquez (who were convicted of Ms. Raymond and Mr. Diop's murder), and who remain wrongfully imprisoned. In addition, Mr. Diop's actual murderers have come forward and given full confessions to the U.S. Attorney's Office for the Southern District of New York. Federal prosecutors are also cooperating with Mr. Vasquez's former co-defendants and have submitted evidence in support of their motions to vacate their criminal convictions. Plaintiff has disclosed to Defendants information regarding the confessions of Mr. Diop's actual murderers, the U.S. Attorney's investigation and

corroboration of those confessions, and the videotaped interviews of Cathy Gomez and

her brother, Hanley Gomez.  To date, Defendants have chosen not to conduct any follow-

up discovery, and have taken no depositions.

## ARGUMENT

### I.    Standard

In deciding a Rule 12(b)(6) motion, a court must "accept[] all factual

allegations as true, and draw[] all reasonable inferences in the plaintiff's favor."  *DiFolco*

*v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (alteration in original,

internal quotation marks omitted).  "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009) (citations

omitted).  At this stage of the proceeding, it is "not the Court's function to weigh the

evidence that might be presented at a trial, the Court must merely determine whether the

complaint itself is legally sufficient, and in doing so, it is well settled that the court must

accept the allegations of the complaint as true, and construe all reasonable inferences in

favor of the plaintiff."  *Nowosad v. English,* 903 F. Supp. 377, 381 (E.D.N.Y. 1995)

(internal citations omitted).

### II.    This Court's prior holding that the Amended Complaint is not futile is the law of the case

Defendants previously opposed the filing of the Amended Complaint on

futility grounds.  This Court found Defendants' arguments to be without merit.  They

now recycle their prior failed arguments in attempting to dismiss the Amended

Complaint.

"Where a party opposes leave to amend on 'futility' grounds, the

appropriate legal standard is whether the proposed complaint fails to state a claim, the

traditional Fed. R. Civ. P. 12(b) standard." *N.H. Ins. Co. v. Total Tool Supply, Inc.*, 621

F. Supp. 2d 121, 124 (S.D.N.Y. 2009).

> If the proposed claim sets forth facts and circumstances which may entitle
> the plaintiff to relief, then futility is not a proper basis on which to deny
> the amendment. . . . Even where the possibility of relief is remote,
> amendment must be permitted because it is the possibility of recovery, not
> its likelihood, that guides the court's analysis.

*Gallegos v. Brandeis Sch.*, 189 F.R.D. 256, 259 (E.D.N.Y. 1999) (citations omitted).

In holding that the Amended Complaint was not futile, the Court

previously determined that the Amended Complaint sets forth "facts and circumstances

which may entitle the plaintiff to relief." That determination is the law of the case. *See*

*Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) ("The law of the case doctrine

commands that when a court has ruled on an issue, that decision should generally be

adhered to by that court in subsequent stages in the same case unless cogent and

compelling reasons militate otherwise.") (quotations omitted).   The Court's prior

determination that the Amended Complaint is not futile should be adhered to, given that

there are no "cogent and compelling reasons" to find that Amended Complaint is

insufficient as a matter of law.

### III.    The Amended Complaint sets forth specific facts in support of each of Plaintiff's claims

The Amended Complaint more than adequately sets forth specific

allegations to support Mr. Vasquez's claims, including the following:

- Defendants Aiello, Nieves, and Donnelly repeatedly questioned a teenager named Cathy Gomez and a drug addict, Miriam Tavares, who spoke only Spanish, about their knowledge of the Raymond murder. Prior to questioning Cathy Gomez, Defendants also questioned Ms. Gomez's younger brother at the 43rd Precinct. They improperly influenced these witnesses' testimony in a number of ways. AC ¶¶ 25-26.

- By using a variety of unconstitutional practices, including but not limited to questioning the witnesses together, using Cathy Gomez as a translator for Miriam Tavares, feeding details about the crime scene and police investigation that were unknown to the witnesses, threatening to unjustifiably jail Ms. Gomez's parents who were on probation and parole, interrogating Ms. Gomez's fifteen-year-old brother and threatening to prosecute him, and giving both witnesses, who were indigent, financial incentives to provide false incriminating evidence, the Defendants manufactured testimony against Plaintiff that they knew or should have known was false. AC ¶ 31.

- As a result of the highly suggestive, coercive, and unconstitutional tactics Defendants used while questioning her, Cathy Gomez falsely claimed that, the day after Ms. Raymond's death, she was in a park with a lot of people and allegedly overheard several individuals make statements about the Raymond homicide. AC ¶ 32.

- After Defendants told her that a juice container and mustard jar was found in Ms. Raymond's sink and an empty deli wrapper in her refrigerator, which the police theorized the murderers had left, Ms. Gomez eventually claimed that Plaintiff made a statement in the park about drinking juice and having a sandwich. AC ¶ 33. This was non-public information that Ms. Gomez would not have been able to speak about unless she had been provided this information by the police.

- Defendants knew or should have known that they did not have probable cause to arrest and prosecute Plaintiff for either homicide because they deliberately used constitutionally impermissible practices to manufacture false evidence against him. AC ¶ 41.

- The Defendants knowingly coached Ms. Gomez, the only witness against Plaintiff for the Raymond homicide, to give false testimony against Plaintiff, which led to his wrongful and unjust prosecution and conviction. AC ¶ 42.

- Additionally, the Defendants knew they did not have probable cause to arrest and prosecute Plaintiff, since a mere two weeks after the murder, before Plaintiff was even arrested, Ms. Gomez told Defendant Donnelly that she did not know anything about the Raymond murder. AC ¶ 43.

- Defendants suppressed key pieces of information during Plaintiff's

trial.  AC ¶ 48.

- Defendants lied to the prosecutors about vouchering a tape that constituted *Brady* material, and thus prevented the tape from being discovered or produced to the defense during Mr. Vasquez's trial. AC ¶ 67-68.

Plaintiff's Complaint more than adequately alleges facts to establish each of his claims.  As this Circuit held in *Ricciuti v. N.Y.C. Transit Authority*, 124 F. 3d 123, 125 (2d Cir. 1997), allegations that police manufactured evidence and prepared false reports are precisely the types of claims that must be carefully reviewed by courts, and not dismissed summarily:

> The record before us reveals evidence from which a jury could find that certain of the individual police officers prepared a false report and initiated a prosecution of plaintiffs predicated on this manufactured evidence.  We also write to emphasize a larger issue raised by this case. Plaintiffs allege that the defendant police officers lied and fabricated evidence. . . . [S]uch accusations must be carefully reviewed.  Lying is wrong, and if the police lie while acting in their official capacity, they also violate the public trust.  Courts must ensure that such serious accusations receive appropriate scrutiny lest our Court appears to endorse such official misconduct.

*Id.* (denying summary judgment in a Section 1983 malicious prosecution claim).  Mr. Vasquez has adequately alleged facts that indicate that the police "manufactured evidence. . . [and] lied and fabricated evidence" against him.  *Id.*  His Complaint should not be dismissed.

## A.  Plaintiff's malicious prosecution claim is strong

Mr. Vasquez has adequately alleged a claim for malicious prosecution. "To prevail on a claim of malicious prosecution, four elements must be shown: (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor." *Ricciuti,* 124 F.3d at 130.

The Complaint states that Defendants arrested Mr. Vasquez and procured an indictment against him by using a variety of unconstitutional methods, including fabricating evidence against him and coercing witnesses into giving testimony that they knew was false.  AC ¶¶ 31-36, 41.  This satisfies the first element.  *Ricciuti,* 124 F.3d at 130 (stating that a jury could find that a police officer played a role in initiating the prosecution by preparing false evidence and forwarding it to prosecutors).   The Complaint also sufficiently alleges the personal involvement and misconduct of each Defendant.  Here, Defendants worked together to manufacture evidence, knowingly solicited false testimony, completed false police reports, and hid *Brady* material from the prosecution.  This is precisely the type of personal involvement by police officers and detectives that satisfies the first element of a malicious prosecution claim.  *Chimurenga v. City of New York*, 45 F. Supp. 2d 337, 343 (S.D.N.Y. 1999) ("[T]here is . . . a triable issue as to whether the defendants planted evidence on the plaintiff.  Where a party is responsible for providing false information or manufactured evidence that influences a decision whether to prosecute, he may be held liable for malicious prosecution.")  The fact that a prosecutor ultimately makes a determination to present a case to a grand jury, *see, e.g.*, *Rehberg v. Paulk*, 132 S. Ct. 1497, 1508 (2012), is irrelevant when that determination rests precisely on the false evidence manufactured by detectives or police officers.

Likewise, the Complaint sufficiently alleges that it was the three individual detective Defendants – rather than the prosecutor – who was responsible for Mr. Vasquez's malicious prosecution.  "In malicious prosecution cases against police officers, plaintiffs have met this first element of initiation of prosecution by showing that

officers brought formal charges and had the person arraigned, *Cook v. Sheldon*, 41 F.3d

73, 79 (2d Cir.1994), or filled out complaining and corroborating affidavits, *Carter v.

Port Auth. of New York & New Jersey*, 2004 WL 2978282, at *8 (S.D.N.Y. Dec. 20,

2004), or swore to and signed a felony complaint, *Cox v. County of Suffolk*, 827 F.Supp.

935, 938 (E.D.N.Y. 1993)." *Cunninham v. New York City,* 04 CIV. 10232 (LBS), 2007

WL 2743580 (S.D.N.Y. Sept. 18, 2007) (Sand, J) (applying summary judgment

standard).   The Complaint alleges that it was Defendants who procured an indictment

against Plaintiff, and discovery has confirmed that this was, in fact, the case.  AC ¶ 35

(Defendants arrested and indicted Plaintiff with no probable cause); AC ¶ 47 (Defendants

"procured an indictment against Mr. Vasquez in bad faith and conspired to charge him

with falsely committing two unrelated murders in bad faith.").

Mr. Vasquez has also satisfied the second and third elements of a

malicious prosecution claim by pleading lack of probable cause and malice.

The Complaint alleges that Defendants knew or should have known that they did not

have probable cause to arrest and prosecute Mr. Vasquez for either homicide, because

they used a variety of unconstitutional practices to manufacture evidence against him.

AC ¶ 41.  Mr. Vasquez's allegations satisfy both the elements of lack of probable cause

and malice. *Ricciuti*, 124 F.3d at 131 ("lack of probable cause generally raises an

inference of malice sufficient to withstand summary judgment" on a malicious

prosecution claim); *Cunninham*, 04 CIV. 10232 (LBS), 2007 WL 2743580 at *6

(S.D.N.Y. Sept. 18, 2007) (noting that the malice element is "closely related to the lack

of probable cause requirement").

The allegation that the Defendants manufactured evidence itself is sufficient to state a claim for malicious prosecution. *See, e.g.*, *Chimurenga v. City of New York*, 45 F. Supp. 2d 337, 343 (S.D.N.Y. 1999) (noting the existence of a "triable dispute as to whether genuine probable cause existed or whether the individual defendants manufactured it falsely" which "not only prevents the Court from granting summary judgment on the ground that probable cause is lacking but dictates the conclusion that a triable issue exists as to the fourth and final element of a malicious prosecution claim: malice."). But the Complaint pleads many more instances of misconduct, and details the unconstitutional tactics used to falsify evidence against Mr. Vasquez. AC ¶ 30 (Defendants relied on Ms. Tavares and Ms. Gomez despite knowing they were unreliable); AC ¶ 31 (Defendants manufactured evidence by threatening Ms. Gomez and providing her with details of the crime); AC ¶ 33 (Defendants told Ms. Gomez about the sandwich wrapper in Ms. Raymond's apartment); AC ¶¶ 36-38 (Defendants arrested Mr. Vasquez on the basis of unverified information by Ms. Tavares that she saw the Diop homicide from a small opening in her bathroom window some distance from the crime scene, never verified whether it was even possible for her to see anything from her window, and relied on her testimony despite her inconsistent accounts); AC ¶ 43 (Defendants relied on Ms. Gomez even after she told them she knew nothing); AC ¶¶ 16, 46 (Defendants manufactured evidence that the Diop and Raymond murders were committed by the same people, despite the complete absence of objective evidence linking both crimes); AC ¶¶ 68-69 (Defendants deliberately concealed *Brady* material by failing to voucher a tape that undermined their conspiracy theory against Plaintiff, by falsely completing police reports stating that the tape showed nothing, and

by lying to the prosecution about whether the tape had been vouchered, and about what it showed).

Defendants' arguments that it was the grand jury or the trial court judge that was responsible for Mr. Vasquez's conviction fails.  As Defendants' concede, any presumption of probable cause created by a grand jury indictment may be overcome "by evidence that the indictment was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith." *Green v. Montgomery*, 219 F.3d 52, 60 (2d Cir. 2000).  As discussed above, this is precisely the type of conduct that the Complaint alleges Defendants engaged in.  The second and third elements of a malicious prosecution claim have been satisfied.

Defendants' arguments to the contrary improperly ask the Court to weigh evidence in their favor.  With regard to the facts relating to the *Brady* claim, the Defendants ask this Court to conclude that the videotape was not in fact *Brady* material, and that the defense attorneys should have known that the videotape had been taken into police custody.  But in fact the defense attorneys were provided with police reports that falsely stated that the tape had been viewed, and it showed *nothing*.  AC ¶¶ 69, 72, 75, 77.  This can hardly be said to indicate to the defense that the tape was *Brady* material. The McKinnon trial court already rejected this argument, and held that it was a serious *Brady* violation to fail to produce the tape.[1]  In addition, the Complaint alleges that Defendants concealed material evidence and hid it from the prosecutor.  AC ¶¶ 72-75, 77. In making this allegation, the Complaint relies on the prosecutor's own statement on the

---

[1] As the Complaint explains, Charles McKinnon was Mr. Vasquez's co-defendant who was charged with having hired Mr. Vasquez and others to carry out the Raymond murder.  AC ¶¶ 50-52.  His case went to trial after Mr. Vasquez had already been convicted.  AC ¶ 71.  After his jury heard evidence relating to the *Brady* violation – as well a stipulation stating that Defendant Aiello, the lead detective in the Raymond homicide, had lied and hidden evidence from the prosecutor – he was acquitted of all charges.  AC ¶ 78. The *Brady* violation was only discovered in February 2012, after his transcript was unsealed.

record that Defendant Aiello told him that the *Brady* material had never been taken into police custody because the tape had nothing on it.   AC ¶¶ 72, 77.  According to the prosecutor, this is what Defendant Aiello said – and this was a lie.  Given this record, and the specific allegations in the Complaint relating to the *Brady* violation (as well as the trial court's determination that the videotape was *Brady* material, and that it was a "serious" *Brady* violation not to produce the tape to the defense, AC ¶ 76)[2], the Complaint clearly alleges misconduct on the part of Defendants.

Defendants also argue that Mr. Vasquez's conviction itself establishes probable cause.  Essentially, they make a circular argument that any malicious prosecution claim must fail whenever an individual is convicted.  This is not the law.  Plaintiff's claim is that Defendants' wrongful acts – such as their manufacturing evidence and lying to prosecutors – constituted malicious prosecution and deprived him of the opportunity for a fair trial, and that this resulted in his wrongful conviction.

As Defendants' concede, the criminal proceedings against Mr. Vasquez were terminated in his favor.  Mr. Vasquez has adequately pled a malicious prosecution claim.

## B.  Plaintiff's due process claim is unassailable

Defendants concede – as they must – that Plaintiff has adequately pled each of the elements of a denial of due process claim, given that he alleges that Defendants created false evidence and forwarded that to prosecutors.  Def. Br. at 23.  *See*

---

[2] Defendants make the puzzling argument that this Court should take "judicial notice of Judge Donnino's determination and find that the videotape is not *Brady* material." Def. Br. at 20.  But the court made precisely the opposite determination at Mr. McKinnon's trial, and held that the failure to produce the tape was a serious *Brady* violation.  Mr. Vasquez never had the opportunity to argue that a *Brady* violation occurred at his trial, because the videotape was never produced at his trial, or at any point during the appeal of his conviction. AC ¶¶ 70, 79-81.

*Ricciuti*, 124 F.3d at 130 ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983."); *see also Zahrey v. Coffey,* 221 F.3d 342, 355 (2d Cir. 2000) ("It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer.").

        Defendants argue that Plaintiff cannot assert both a denial of due process and a malicious prosecution claim on the same evidence. This argument has repeatedly been rejected by courts in this District. *See, e.g.*, *Nibbs v. City of New York*, 800 F. Supp. 2d 574, 576 (S.D.N.Y. 2011) (holding that "courts in this District have regularly found *Ricciuti* to stand for the proposition that a claim for denial of a right to a fair trial may be brought alongside one for malicious prosecution even where both are supported by the same evidence") (citing cases); *see also Brandon v. City of New York,* 705 F. Supp. 2d 261, 276 (S.D.N.Y. 2010) ("[I]n *Ricciuti* the plaintiff brought claims for both malicious prosecution and denial of his fair right to trial based on the same alleged fabrication of evidence, and the Court of Appeals permitted both claims."); *Jovanovic v. City of New York,* No. 04 Civ. 8437, 2006 WL 2411541, at *13 (S.D.N.Y. Aug. 17, 2006) (holding that, where causes of action for malicious prosecution and denial of a fair trial based on fabrication of evidence co-exist, Plaintiff may bring both claims); *Schiller v. City of New York,* 04 CIV. 7922 RJS JCF, 2008 WL 200021 at *10 (S.D.N.Y. Jan. 23, 2008) (noting that a plaintiff may bring both malicious prosecution and due process violation claims,

and that "the addition of a due process claim [to a malicious prosecution complaint]
would hardly be futile.")

    Defendants next argue that Plaintiff should have commenced his action for
denial of a fair trial during the years that he was wrongfully imprisoned for murder, prior
to the vacatur of his conviction.  This argument is wrong.  Plaintiff's claims under 42
U.S.C. § 1983 did not accrue until his conviction was reversed and the indictment
dismissed.  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ("[I]n order to recover
damages for allegedly unconstitutional conviction or imprisonment, or for other harm
caused by actions whose unlawfulness would render a conviction or sentence invalid, a §
1983 plaintiff must prove that the conviction or sentence has been reversed on direct
appeal. . . .  A claim for damages bearing that relationship to a conviction or sentence that
has *not* been so invalidated is not cognizable under § 1983"); *see also Amaker v. Weiner,*
179 F.3d 48, 51-52 (2d Cir. 1999) (applying *Heck* and holding that a prisoner-plaintiff
may not bring a § 1983 claim relating to his wrongful conviction for murder until the
conviction has been vacated).   Mr. Vasquez had no cognizable § 1983 claims relating to
his wrongful conviction until his conviction was overturned.  *Mitchell v. Victoria Home,*
377 F. Supp. 2d 361, 372 (S.D.N.Y. 2003), relied on by Defendants, is inapposite, as it
involves only a Section 1983 claim for false arrest – rather than claims relating to a
plaintiff's wrongful conviction.  *Id.* (distinguishing *Heck* on the grounds that it did not
involve a false arrest claim, and holding that a "wrongful arrest claim would not
necessarily undermine a criminal conviction").

## C.  Plaintiff has sufficiently alleged a *Monell* claim

"To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 737 (S.D.N.Y. 2012).  *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

Plaintiff asserts several bases for his *Monell* claim, including that: (i) the City failed to train police investigators regarding providing *Brady* material to prosecutors AC ¶ 105; (ii) the City failed to train its employees, including the individual defendants, in regard to properly questioning witnesses and manufacturing evidence, AC ¶ 107; (iii) that the City failed to discipline police officers and detectives who engaged in wrongful conduct by falsifying or manufacturing evidence.  AC ¶¶ 109-10.  In addition, the Complaint cites to numerous judicial decisions and Comptroller's reports finding that the City has done little or nothing to discipline detectives who engage in the type of unlawful behavior discussed in Mr. Vasquez's Complaint, AC ¶ 109,[3] and alleges that it was these failures to train and discipline that resulted in his wrongful conviction.  AC ¶ 115.

---

[3] Plaintiff's Complaint sufficiently alleges the existence of a policy/custom, but if the Court finds this aspect of the Complaint insufficiently detailed, rather than dismissing the *Monell* claim, Plaintiff respectfully requests that the Court grant Plaintiff leave to replead and include citations to the following, which Plaintiff provided to Defendants on June 5, 2012 (over two months before the Amended Complaint was filed) as part of his supplemental disclosures regarding the *Monell* claim: Report by Comptroller Elizabeth Holtzman, V0009284-9303, Report by Comptroller Alan G. Hevesi, V0009304-9307, Commission Report to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department, V0009308-9577, Report by the Association of the Bar of the City of New York, V00009578-9586, *People v. Cortez*, 149 Misc.2d 886 (Sup. Ct. Kings Co. 1990); *People v. Moss*, 176 A.D.2d 826 (2d Dept 1991); *People v. Nikollaj*, 155 Misc.2d 642 (Sup. Ct Bronx County 1992); *People v. Clausell*, 182 A.D.2d 132 (2d Dept. 1992); *Hart v. City of New York*, 186 A.D.2d 398 (1st Dept.1992); *People v. Johnson*, 81 N.Y.2d 828 (1993); *People v. Dunn*, 185 A.D.2d 54 (1st Dept. 1993); *People v. Jordan*, 207 A.D.2d 700 (1st Dept. 1994); *People v. Rojas*, 213 A.D.2d 56 (1st Dept. 1994); *People v. Morrow*, 204 A.D.2d 356 (2d Dept. 1994); *People v. White*, 200 A.D.2d 351 (1st Dept. 1994); *People v. Anderson*, 222 A.D.2d 442 (2d Dept. 1995); *People v. Bell*, 217 A.D.2d 585 (2d Dept. 1995); *People v. Brogdon*, 213 A.D.2d 418 (2d Dept. 1995); *People v. Joseph*, 86 N.Y.2d 565 (1995); *People v. White*, 232

Such allegations satisfy precisely the pleading requirements for a *Monell*

claim. *See, e.g., Bertuglia*, 839 F. Supp. 2d 703, 737 (S.D.N.Y. 2012) ("The plaintiffs

have alleged two bases for their *Monell* claim: first, the City's failure to train prosecutors

to avoid various forms of misconduct, including threatening witnesses, *Brady* violations,

and introducing inadmissible 'bad act evidence' and other improper conduct before grand

juries; and second, the City's policy of lax discipline with regard to prosecutors who did

commit such acts of misconduct. Both are viable theories of a policy or custom that can

satisfy the first requirement for a *Monell* claim.") (internal citations omitted); *see also*

*Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992) (holding that in order to

adequately plead *Monell* claim for failure to train, Plaintiff must plead that "a

policymaker knows 'to a moral certainty' that her employees will confront a given

situation;" and that training/supervision would make the situation less difficult; and that

"the wrong choice by the city employee will frequently cause a deprivation of a citizen's

constitutional rights."). As in *Bertuglia*, the Complaint details that it was "the City's

failure to train [detectives] to avoid various forms of misconduct, including threatening

---

A.D.2d 436 (2d Dept. l996);  *People v. Gallman,* 240 A.D.2d 512 (2d Dept. 1997); *People v. Jackson,* 237 A.D.2d 179 (1st Dept. 1997);  *People v. Branch,* 175 Misc.2d 933 (Sup. Ct. Kings County 1998); *People v. Cannon,* 191 Misc.2d 136 (Sup. Ct. Kings Co. 2002); *People v. Bond,* 95 N.Y.2d 840 (2000); *Tong v. City of New York, et al.,* 95-cv-7965 (S.D.N.Y.); *Dabbah v. City of New York, et al.,* 95-cv-2952 (S.D.N.Y.); *Boland v. City of New York, et al.,* 93-cv-5058 (E.D.N.Y.);  *Kadlub v. City of New York, et al.,* 95-cv-1080 (E.D.N.Y.); *Castro v. City of New York, et al.,* 94-cv-5114 (S.D.N.Y.); *McCaskill v. City of New York, et al.,* 96-cv-3687 (E.D.N.Y.); *Gurley v. City of New York, et al.,* 95-cv-2422 (E.D.N.Y.); *Gaylock v. City of New York, et al.,* 96-cv-6183 (E.D.N.Y.); *Gordon v. City of New York, et al.,* 97-cv-8035 (S.D.N.Y.); *Perez v. City of New York, et al.,* 98-cv-2331 (S.D.NY.); *Ziehenni v. City of New York, et al.,* 98-cv-3763 (S.D.N.Y.); *Deluise v. City of New York, et al.,* 98-cv-2551 (S.D.N.Y.); *Napoli v. City of New York, et al.,* 97-cv-1255 (E.D.N.Y.); *Jefferson v. City of New York, et al.,* 98-cv-1097 (E.D.N.Y.); *Denizard v. City of New York, et al.,* 98-cv-423 (E.D.N.Y.); *Sweazie v. City of New York, et al.,* 99-cv-419 (E.D.N.Y.); *Daniels v. City of New York; et al.,* 00-cv-1981 (S.D.N.Y.); *Almonte v. City of New York, et al.,* 99-cv-519 (E.D.N.Y.); *Fields v. City of New York, et al.,* 99-cv-8130 (E.D.N.Y.); *Younger v. City of New York, et al.,* 00-cv-836 (S.D.N.Y.);  *Lovell v. City of New York, et al.,* 00-cv-0002 (S.D.N.Y.); *Cotto v. City of New York, et al.,* 00-cv-1341 (E.D.N.Y.);  *Coleman v. City of New York, et al.,* 00-cv-2019 (E.D.N.Y.); *Crespo v. City of New York, et al.,* 93-cv-8847 (S.D.N.Y.).  Ex. A to the Declaration of Eisha Jain dated September 28, 2012.

witnesses, *Brady* violations . . . and other improper conduct before grand juries; and second, the City's policy of lax discipline with regard to [detectives] who did commit such acts of misconduct" that resulted in the *Monell* violation. *Bertuglia*, 839 F. Supp. 2d at 737.

Defendants' reliance on *Connick v. Thompson*, 131 S.Ct. 1350, 1365 (2011), is misplaced. As this Court noted in *Bertuglia*, "the Court in *Connick* plainly acknowledged that, 'in limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983,'" and distinguished *Connick* – which involved a motion to set aside the verdict – as being materially distinct from a case that is "at the pleadings stage." *Bertuglia*, 839 F. Supp. 2d at 737-38. *See also Cash v. County of Erie*, 654 F.3d 324, 337 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1741, (2012) (post-*Connick* decision upholding jury determination of *Monell* liability based on a single instance of sexual assault by a prison guard, and holding that sufficient evidence was presented at trial to allow the jury to conclude that the City was deliberately indifferent to the risk of sexual assault in prisons).

Plaintiff has adequately pled a *Monell* claim.

## IV. Defendants' factual arguments regarding the weight of the evidence are improper on a motion to dismiss, and are without merit.

Apparently recognizing that the Complaint sets forth specific facts in support of each of Mr. Vasquez's claims, Defendants resort to making arguments that are wholly irrelevant. They ask this Court to accept the truth of various documents they seek to attach to their papers, and to conclude on the basis of Ms. Gomez's testimony at the *Castillo* hearing that there was probable cause for Mr. Vasquez's arrest. *See* Def. Br. at 2

(arguing that this Court should "reasonably conclude that it was not the absence of probable cause, nor any alleged police misconduct, that ultimately led to the reversal of Plaintiff's conviction.")   This type of argument has no place in a motion to dismiss, and ignores the standard that the Court must "accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor." *DiFolco*,  622 F.3d at 110-11.

### A. Judicial notice may not be taken of court documents for the *truth* of the matter asserted

While a court may take judicial notice of a matter filed in another court, this notice is *not* for the truth of the matter asserted in those filings; rather, it is only to establish the fact of such litigation.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (citing *United States v. Walters*, 510 F.2d 887, 890 n.4 (3d Cir. 1975) (on review of denial of habeas corpus, judicial notice of briefs and petitions filed in state courts to determine whether petitioner had exhausted his state remedies)).

"Consideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires only that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) (citations omitted).  "[W]hen a district court considers certain extra-pleading materials and excludes others, it risks depriving the parties of a fair adjudication of the claims by examining an incomplete record." *Id.* at 155.

This is precisely what the Defendants attempt to do here. They have cherry-picked facts that they believe supports their claims, while ignoring the extraordinary evidence of Defendants' culpability that has been produced in discovery. With two months left in discovery, Defendants make the conclusory argument that Plaintiff's complaint should be dismissed because insufficient evidence supports his claims. This type of argument is not appropriate on a motion to dismiss – and in any event, Defendants' arguments are highly misleading, given that they have not taken any depositions, or asked Ms. Gomez about the nature of her interactions with the police. Plaintiff, on the other hand, has produced videotaped statements of both Cathy and Hanley Gomez, in which they confirm the allegations in the Complaint, state that the police provided them with details about the crimes, and forced them to give statements that Defendants knew were false. This alone creates a material dispute of fact that would defeat a summary judgment motion – much less a motion to dismiss.

Defendants also ignore powerful evidence – gathered by the U.S. Attorney's Office for the Southern District of New York – that there was blatant police misconduct throughout the investigation and prosecution. A federal investigation has concluded that two members of the gang Sex, Money, Murder – Gilbert Vega and Johnny Rodriguez – actually committed the Diop homicide, and confessed to it years ago as part of federal cooperation agreements. After corroborating the confessions, the federal investigation concluded that Mr. Vasquez, and all of those charged with the Diop murder, were actually innocent, and that the prosecution's key witness regarding the Diop homicide, Miriam Tavares, perjured herself. Since Ms. Tavares testified about non-public details about each crime, such as the exact items taken from Mr. Diop, the number

of times he was shot, and the fact that two different guns were used in the shooting – but her testimony was entirely false (given that the actual murderers have provided detailed and credible confessions to federal judges and to the U.S. Attorney's Office), this reveals the true source of her "knowledge" – the police.

While Mr. Vasquez need not prove his claims at this point, or introduce substantive evidence in a motion to dismiss, these facts are relevant in showing that Defendants present a highly misleading view of the facts and discovery to date, and their regarding the sufficiency of Mr. Vasquez's claims should be disregarded.

### B. Plaintiff has sufficiently alleged claims against each Defendant

Plaintiff has sufficiently alleged facts to support his claims against each Defendant. Unlike in *Iqbal*, where the plaintiff alleged claims against distant policymakers (like the Attorney General), Mr. Vasquez brings suit solely against three detectives, each of whom was personally involved in the investigation against him. None of the Defendants are supervisory defendants; each personally engaged in the investigation against Mr. Vasquez. Defendants appear to be arguing that since the Complaint refers to the three of them collectively as "Defendants" – rather than specifying each individual Defendant by name – that the Complaint fails to give them sufficient notice of the claims against them. This argument is specious. Plaintiff need not specifically name each Defendant when he describes their misconduct, particularly when he alleges that the Defendants acted in concert. A plaintiff's allegations are sufficient where they "raise a reasonable expectation that discovery will reveal evidence" to support their claims. *Matrixx Initiatives, Inc. v. Siracusano*, --- U.S. ---, 131 S. Ct. 1309, 1323 (2011). Here, Plaintiff's Complaint raise the reasonable expectation that

discovery will reveal evidence that the three individual Defendants, acting together, engaged in acts such as manufacturing evidence and knowingly coercing witnesses into giving false testimony. (And this is precisely what discovery has revealed – there is no dispute that each Defendant was involved in the investigation, and that they worked together.) The Complaint more than adequately gives each Defendant notice of the conduct for which he or she is being sued.

### C. Defendants are not entitled to qualified immunity

The Complaint alleges that Defendants provided witnesses with the details of the crimes, knowingly coerced/coached them into giving false testimony, manufactured evidence against Mr. Vasquez, and concealed *Brady* material. On these facts, Defendants are not entitled to qualified immunity. Defendants cannot manufacture evidence, and then claim that they are entitled to rely on the very evidence they deliberately and unlawfully created. *Zahrey*, 221 F.3d at 355 ("It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer.") "Qualified immunity does not protect those who knowingly violate the law." *Marshall v. Sullivan*, 105 F.3d 47, 53-54 (2d Cir. 1996) (internal citations and quotations omitted).

### CONCLUSION

For the aforementioned reasons, Plaintiff requests that the Court deny Defendants' motion to dismiss in its entirety.

Dated: September 28, 2012
      New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

75 Rockefeller Plaza, 20th Floor
New York, New York 10019
(212) 763-5000

_____
Earl S. Ward
Eisha Jain


ROMANO & KUAN, PLLC
Julia P. Kuan
100 Lafayette Street, Suite 401
New York, NY 10013

*Attorneys for Plaintiff*